IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MEDARC, LLC, as Collection Agent for** | § | |
| **Jeffrey H. Mims, Trustee of the Liquidating** | § | |
| **Trust of Revolution Monitoring, LLC,** | § | |
| **Revolution Monitoring Management, LLC,** | § | |
| **and Revolution Neuromonitoring, LLC,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-3241-N-BH** |
| | § | |
| **SCOTT AND WHITE HEALTH PLAN,** | § | |
|     **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court is *Defendant's Motion to Dismiss Plaintiff's Claims and Memorandum in Support*, filed November 30, 2020 (doc. 8). Based upon the relevant filings and applicable law, the motion should be **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

On September 25, 2020, MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (Plaintiff), sued Scott and White Health Plan (Defendant) in state court, asserting claims for breach of contract, promissory estoppel, and quantum meruit. (*See* doc. 1-4.) Defendant removed the lawsuit on the basis of diversity jurisdiction under 28 U.S.C. § 1332 on October 23, 2020. (*See* doc. 1.)

According to the original petition, Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (collectively Revolution) filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas

---

[1] By order of reference dated January 28, 2021 (doc. 13), this case has been referred for pretrial management..

between September 27, 2018 and October 5, 2018. (*See* doc. 1-4 at 2 fn.1, 11.)[2] On July 23, 2019, the bankruptcy court entered an order confirming the Debtors' Second Joint Plan of Reorganization, which among other things, provided for the creation of a Liquidating Trust, the appointment of Jeffrey H. Mims as Liquidating Trustee, and the appointment of Plaintiff to serve as Collection Agent. (*Id.* at 11.)

Prior to its bankruptcy, Revolution was a medical provider that offered intraoperative neurophysiological monitoring (IONM) medical services for operations around delicate parts of the nervous system. (*Id.* at 3.) IONM technology provides "real-time" monitoring of the state of the nervous system during surgery, which alerts surgeons of potential evolving neurologic injury in order to allow for corrective actions to avoid permanent injury or death. (*Id.* at 4.) These medical services are primarily utilized in spinal, cranial, facial, throat, and peripheral surgeries. (*Id.* at 3-4.) Defendant is a business that underwrites and administers the health insurance benefits of individuals in Texas (Insureds) who received Revolution's IONM medical services. (*Id.* at 4-5.) The Insureds are covered by ERISA-exempt health benefit plans, which are categorized as "government plans" and "private plans" and are governed by Texas state law. (*Id.* at 10.) "Government plans are those in which state or local government entities contract with Defendant to administer health benefits to their employees," while "[p]rivate plans are those in which individuals contract with Defendant to administer health benefits." (*Id.*)

Plaintiff alleges that Revolution followed the same process for all medical services provided to the Insureds. (*Id.* at 6.) Revolution received orders from physicians to schedule its IONM medical services in connection with the Insured's medical procedure to be performed at the physician's

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

surgical facility. (*Id.*) After receiving the order and before rendering medical services, Revolution obtained verification from Defendant that "each patient was covered by a health benefit plan that provided out-of-network benefits," that "the particular procedures were covered by the relevant health benefit plan," and that it "would be paid in accordance with the health benefit plan." (*Id.*) Revolution also obtained an assignment of benefits from the Insured, assigning it in relevant part, "(1) the rights and interest to collect and be reimbursed for the medical service(s) performed for the patient; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5) the reasonable assistance of the patient in pursuing third-party payments." (*Id.* at 7.) During the verification process, Defendant did not identify or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans, including any anti-assignment provisions. (*Id.*) Plaintiff alleges that "Revolution would not have provided these services to these patients without first obtaining this verification from Defendant." (*Id.*)

After the medical services were performed, Revolution submitted claims through Defendant's designated claims-handling channels, and they were either denied or drastically underpaid. (*Id.* at 8.) Revolution appealed the non-payment or underpayment of the claims via Defendant's designated appeals channels, but all appeals were denied. (*Id.*) "Defendant failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, including but not

3

limited to any anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse determination." (*Id.*) Even though the billed amounts "represent[ed] the usual and customary rate for the particular medical services in and around the counties in which the services were performed," Defendant paid "much less than the amount billed for the services rendered." (*Id.* at 9.)

Plaintiff alleges that Defendant improperly denied Revolution's claims for payment for IONM medical services provided to Insureds, and that these claims should have been paid to Revolution as the Insureds' lawful assignee because they were medically appropriate and necessary and were covered by the applicable plan terms. (*Id.* at 10.) It also alleges that Defendant "stopped paying Revolution for many services provided to the Insureds," it "indiscriminately denied payment for most claims and services based on an unsupported and erroneous assertions," and its "treatment of Revolution's appeals of adverse benefits determinations was contrary to the terms of applicable health benefit plans." (*Id.*) Plaintiff contends that "Defendant made claims determinations that had the effect of reimbursing less than the percentage of actual charges actual charges required by the applicable health benefit plans." (*Id.* at 10.)

On November 30, 2020, Defendant moved to dismiss Plaintiff's claims for promissory estoppel and quantum meruit under Rule 12(b)(6). (doc. 8.) Plaintiff responded on December 21, 2020, and Defendant replied on December 29, 2020. (docs. 11, 12.)

## II. MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's claims for promissory estoppel and quantum meruit under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (doc. 8.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be

4

granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

5

A.     **Promissory Estoppel**

Defendant argues that Plaintiff fails to state a claim for promissory estoppel. (doc. 8 at 6.)

Although normally a defensive theory, promissory estoppel is also available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable promise. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 761 (N.D. Tex. 2012); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex.App.–El Paso 2004, no pet.). To establish a claim for promissory estoppel, a plaintiff must show: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).

Here, Plaintiff alleges that before Revolution provided medical services to the Insureds, Defendant provided it verifications that each patient and the particular procedures were covered by a health benefit plan and that it would be paid a reasonable amount for the services rendered. (doc. 1-4 at 14.) It also alleges that Revolution substantially and reasonably relied to its detriment on the promises made by Defendant, that Revolution would not have provided services without such promises, and that Defendant knew or should have known that Revolution would rely upon the promises. (*Id.*) These facts are sufficient to state a claim for promissory estoppel that is plausible on its face. "Plaintiff alleges a promise, foreseeability of reliance by Defendant[ ], Plaintiff's reliance on Defendant['s] promises, and that reliance was to Plaintiff's detriment." *Rapid Tox Screen LLC v. Cigna Healthcare of Texas Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *15 (N.D. Tex. Aug. 24, 2017).

Defendant argues that Plaintiff's promissory estoppel claim fails because the pre-approvals

6

provided to Revolution did not waive its right to evaluate claims that are later submitted for reimbursement. (doc. 8 at 6-7.)   Because the pre-approvals were not promises of automatic reimbursement, Defendant asserts, it was not reasonable for Revolution to assume payment was guaranteed based on these pre-approvals. (*Id.* at 7.)  It relies on *Fustok v. UnitedHealth Grp., Inc.*, No. 12-CV-787, 2012 WL 12937486 (S.D. Tex. Sept. 6, 2012), in support.

In *Fustok*, an out-of-network health care provider had a practice of submitting pre-authorization forms to the health insurance company for review and approval and performing the requested medical services after receiving pre-approval, and it had previously received reimbursement for those services. *Id.* at *1. The health insurance company denied reimbursement for a number of pre-approved services, explaining that the provider had failed to provide certain documents, including medical records related to the procedures preformed. *Id.* The provider filed suit and asserted a promissory estoppel claim, alleging that the health insurance company promised to reimburse him for medical services performed when it provided him pre-approvals for those services.  The court found that pre-approval did not waive the health insurance company's right to evaluate and deny claims submitted for reimbursement. *Id.* at *5 (citing *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189 (Tex. 1998)). It also found that previous reimbursements did not lead to foreseeability of reliance by the health insurance company because the provider knew that reimbursement was granted on a case-by-case basis. *Id.* The court granted the motion to dismiss the claim for failure to plead the second and third elements of a promissory estoppel claim, but allowed the provider to amend the claim.  *Id.*

*Fustok* is distinguishable. The claims submitted to the health insurance company after pre-approval were denied on the grounds that the provider did not provide certain documents. *Id.* at *1.

Here, Plaintiff alleges that Defendant failed to provide the reasons for denying the claims submitted by Revolution, and that it did not reference or identify the plan provisions underlying its adverse determinations. (*See* doc. 1-4 at 8.) Moreover, "[n]umerous courts confronted with similar allegations have found a complaint adequate to state a claim for promissory estoppel." *Texas Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-02096-M, 2016 WL 3541828, at *12 (N.D. Tex. June 28, 2016) (collecting cases) (concluding that complaint stated a claim for promissory estoppel based on allegations that: (1) plaintiff sought coverage verification before rendering medical services; (2) it provided medical services in reliance on the verification; (3) it would not have provided the services without verification; (4) reliance was foreseeable because it had no other way to learn whether the insurance provider considered certain services covered; and (5) it suffered injury as a result of its reliance on the verification); *see also Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc.*, 16 F. Supp. 3d 767, 781-82 (S.D. Tex. 2014) (denying defendant's motion to dismiss plaintiff's promissory estoppel claim because plaintiff had adequately pleaded facts sufficient to state a claim for relief). Because Plaintiff has pled a facially plausible claim for relief, Defendant's motion to dismiss its promissory estoppel claim should be denied.[3]

---

[3] Defendant raises an additional ground for dismissal in its reply brief, arguing that Plaintiff's promissory estoppel is prohibited under Texas law because "a valid agreement already addresses the matter." (doc. 12 at 3 (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). Because Defendant raised this argument for the first time in its reply brief, it deprived Plaintiff of the opportunity to respond. This argument will therefore not be considered. *See Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (noting practice of declining to consider arguments raised for the first time in a reply brief because non-movant should be given a fair opportunity to respond to the motion) (citing *Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990)). Even if considered, it is unavailing. Although promissory estoppel is not applicable when there is a legally valid contract between the parties, the original petition plainly asserts that Plaintiff's promissory estoppel claim is "separate and apart from any assignment of benefits" and concern promises Defendant allegedly made to Revolution regarding coverage under each patient's health benefit plan. (*See* doc. 1-4 at 14); *see, e.g., Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc.*, No. SA-17-CV-00510-FB, 2018 WL 1887296, at *16 (W.D. Tex. Jan. 19, 2018) ("The undersigned finds that these allegations state a plausible claim for promissory estoppel separate and apart from any claim that plan members would have had based on a failure to pay under the contract.").

C.   **Quantum Meruit**

Defendant argues that Plaintiff's quantum meruit claim fails as a matter of law and should be dismissed with prejudice. (doc. 8 at 7.)

Quantum meruit is a theory of recovery based on principles of unjust enrichment. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). "To recover under quantum meruit, a claimant must prove that: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). "[T]he plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988).

Here, Plaintiff alleges that Revolution provided Defendant "services and other things of value" by rendering medical services to the Insureds. (doc. 1-4 at 14.) This fails to state a claim for quantum meruit because the services rendered by Revolution were for the Insureds, not Defendant. *See Vortt Exploration Co.*, 787 S.W.2d at 944; *Truly*, 744 S.W.2d at 937. "In Texas, quantum meruit is appropriate only where the plaintiff provides valuable services *specifically* for the defendant, not merely where the services benefitted the defendant." *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F. Supp.2d 577, 595-96 (N.D. Tex. 2009) (emphasis original). "Courts have refused to recognize an unjust enrichment or quantum meruit cause of action based on healthcare services provided to a participant or beneficiary of a healthcare insurance policy or plan."

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 962 F. Supp. 2d 887, 898 (S.D. Tex. 2013), *rev'd in part on other grounds*, 614 F. App'x 731 (5th Cir. 2015); *see Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) (dismissing quantum meruit claim against healthcare insurer where medical provider failed to plead facts showing it conferred benefits on the insurer); *Texas Spine & Joint Hosp., Ltd. v. Blue Cross & Blue Shield of Texas, a Div. of Health Care Serv. Corp.*, No. 6:14-CV-952-JDL, 2015 WL 13649419, at *7 (E.D. Tex. May 28, 2015) (same).

Plaintiff concedes that dismissal of its quantum meruit claim is appropriate because it "cannot plead that services were rendered for the person sought to be charged." (doc. 11 at 9.) Defendant's motion to dismiss this claim should be granted.[4]

### III. RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED** in part and **DENIED** in part. Plaintiff's quantum meruit claim against Defendant should be **DISMISSED with prejudice**, unless it files a motion to voluntarily dismiss its claim or a motion for leave to amend in accordance with the local rules within the fourteen-day time period for objecting to this recommendation or any other deadline set by the Court.

---

[4] Plaintiff contends that the quantum meruit claim should be dismissed "without prejudice in accordance with the Federal Rules of Civil Procedure," and that it should be permitted leave to file an amended complaint that eliminates the claim. (doc. 11 at 9.) Although it notes that a court may grant a voluntarily dismissal without prejudice under Rule 41(a)(2), Plaintiff does not expressly move to dismiss the claim under that rule or for leave to amend in accordance with Local Rules 7.1 and 15.1 of the Local Civil Rules for the Northern District of Texas. Compliance with the rules of procedure is required of all parties and leave to amend may be denied for non-compliance. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation). Moreover, because Plaintiff concedes it cannot plead facts to support an element of its quantum meruit claim, it is not clear why a dismissal without prejudice is warranted.

**SO RECOMMENDED** on this 20th day of May, 2021.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11