IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MEDARC, LLC, as Collection Agent for §
Jeffrey H. Mims, Trustee of the Liquidating §
Trust of Revolution Monitoring, LLC, §
Revolution Monitoring Management, LLC, §
and Revolution Neuromonitoring, LLC, §
        Plaintiff, §
 §
v. §     Civil Action No. 3:20-CV-3241-BH
 §
SCOTT AND WHITE HEALTH PLAN, §
        Defendant. §     Consent Case[1]

## MEMORANDUM OPINION AND ORDER

Before the Court is *Defendant's Motion for Summary Judgment*, filed January 28, 2022 (doc. 42). Based upon the relevant filings, evidence, and applicable law, the motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (Plaintiff), brings this action against Scott and White Health Plan (Defendant) to recover payments for out-of-network medical services rendered to patients covered by health insurance plans. (*See* doc. 1-4.)

### A.   Revolution Entities

Revolution Monitoring, LLC (Revolution) was a medical provider that offered intraoperative neurophysiological monitoring (IOM) medical services for operations involving delicate parts of the

---

[1]By consent of the parties and the order of transfer dated January 24, 2022 (doc. 39), this case has been transferred for the conduct of all further proceedings and the entry of judgment.

nervous system. (*See* doc. 1-4 at 3.)[2]  Revolution's team of professionals used IOM technology to monitor the state of the nervous system in "realtime" during surgery to alert surgeons of potential evolving neurologic injury. (*Id.*)

For IOM billing purposes, there are different billing modifiers for the services of the Certified Neuro Intraoperative Monitoring (CNIM) Technologist who is in the operating room, and for the services of the offsite Reading Physician. (doc. 51-1 at 2.)  Because the modifiers cannot be billed together on the same claim, the IOM services provided by the CNIM Technologist and the Reading Physician are billed separately. (*Id.*) Under the billing protocols enacted by the Centers for Medicare & Medicaid Services (CMS), however, the same entity cannot submit different claims for the same procedure. (*Id.*)  To adhere to CMS billing protocols, Revolution created Revolution Neuromonitoring, LLC (RN) to bill for the services provided by the CNIM Technologist, and Revolution Monitoring Management, LLC (RMM) to bill for the services provided by the Reading Physician. (*Id.*)  All collections were initially paid to the billing entity, but the funds were later placed under the control and budget of Revolution. (*Id.* at 3.)  As the "parent" entity of Revolution, RN, and RMM (collectively Revolution Entities), Revolution employed, compensated, and managed all employees of the entities; purchased, distributed, and managed all IOM equipment and supplies; and contracted with all vendors and third-party billing companies.  (*Id.* at 2-3.)

**B.    Revolution Bankruptcy**

Between September 27, 2018 and October 5, 2018, Revolution Entities filed for Chapter 11 bankruptcy in the Northern District of Texas. *See In re Revolution Monitoring, LLC, et al.*, No. 18-33730-hdh-11 (N.D. Tex. Bank.) (Revolution Bankruptcy).  On July 23, 2019, the bankruptcy

---

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

court entered an order confirming the Debtors' Second Joint Plan of Reorganization, which among other things, provided for the creation of a Liquidating Trust, the appointment of Jeffrey H. Mims as Liquidating Trustee, and the appointment of Plaintiff to serve as Collection Agent. (*See* doc. 51-11.) On August 5, 2019, the Liquidating Trust Agreement (LTA) was filed in accordance with the Bankruptcy Plan. (*See* Revolution Bankruptcy, doc. 146.)

Under the Bankruptcy Plan, "all assets of the Debtors, including all cash, accounts receivable, patient medical records, billing records, banking records, billing ID's, billing numbers, medicare ID's, software licenses, passwords, and any other documents, licensure, or information that Debtors have previously used and relied upon, or that is necessary to effect the billing and collection of the Accounts Receivable, shall be transferred, granted, assigned, conveyed, set over, and delivered to the Liquidating Trust...." (doc. 51-11 at 16.)  As Collection Agent, Plaintiff had "full authority regarding the Accounts Receivable to: (i) bill, rebill, and collect the Medical Receivables; (ii) bring lawsuits and settle lawsuits; (iii) negotiate, bring, enforce and settle claims, together with all lawful actions necessary for collection thereof; (iv) enter into collection agreements with third-party collection agencies; (v) [and] enter into engagement agreements with law firms to commence legal adjudication of collections, on behalf of the Debtors and the Liquidating Trustee." (*Id.* at 17-18.)  The net proceeds collected were to be used to pay creditors. (*Id.* at 18.)

## C.    **Medical Services**

Before filing for bankruptcy, Revolution provided medical services to seven patients covered by health insurance plans issued or administered by Defendant from between April 30, 2015 and December 21, 2016. (docs. 47-6 at 2; 51-5.)  Prior to surgery, all patients executed an "assignment of benefits" (AOB) form that provides, in relevant part:

Signature below also consents to request Revolution Monitoring, LLC to submit all invoices associated with the professional services performed during my surgery to my designated insurer or health benefits plan, on my behalf. I consent to and request that my insurance company reimburse Revolution Monitoring, LLC directly for any invoices submitted on my behalf for professional services rendered by the above named company. If for any reason my health benefits plan or insurance company does not reimburse Revolution Monitoring, LLC directly for services rendered on my behalf and reimburses me, I agree to send all payments by my insurer for IntraOperative Neurophysiologic Monitoring and all explanation of benefits to Revolution Monitoring immediately. Failure to remit such payment would make me legally responsible for the reimbursement of Revolution Monitoring, LLC the full amount of their professional fees, co-payments, co-insurance, or deductible amounts for which I am responsible, for delivery of IntraOperative Neurophysiologic Monitoring performed during my surgery. I am also aware that I am legally held responsible for the costs of the IntraOperative Neurophysiologic Monitoring services in my health benefits plan or insurance company fails or refuses to remit the costs for such services.

I authorize Revolution Monitoring, LLC and/or its attorneys to file any necessary claims, demands, or appeals with my insurer or health benefits plan from a denial of reimbursement or coverage for IntraOperative Neurophysiologic Monitoring services provided on my behalf. I also assign Revolution Monitoring, LLC my rights to bring legal action, if needed, against my insurer or health benefits plan to recover the costs of or enforce my rights to coverage of IntraOperative Neurophysiologic Monitoring services under my insurance or health benefits plan under applicable law, including without limitation under the Employee Retirement Income Security Act of 1974.

I understand that Revolution Monitoring, LLC may disclose personal health information (PHI) related to receipt of professional services for the purpose of enacting such as actions as defined above. I agree to provide the necessary information to and reasonably cooperate with and assist Revolution Monitoring to pursue third party payments of my claims for IntraOperative Neurophysiologic Monitoring services.

(docs. 47-5 at 34-41; 51-10.)

After the IOM services were provided, Revolution Entities submitted the 16 insurance claims at issue to Defendant for payment under each patient's health insurance plan. (docs. 47-6 at 2; 51-4 at 2; 51-5.)  Four of the claims are for services to a patient covered by a group health insurance plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). (docs. 47-2 at 155;

47-6 at 4.)  The remaining 12 claims involve health insurance plans not governed under ERISA; six are for services to three patients covered by health maintenance organization (HMO) plans, while the remaining six are for services to three patients covered by preferred provider organization (PPO) plans. (docs. 47-2 at 32, 435; 47-3 at 3, 109, 195, 311; 47-6 at 3-7.)

**D.**     **HMO Plans and Claims**

The HMO plans for all three patients have the same or substantially similar provisions and terms. (*See* docs. 47-2 at 31-91, 434-494; 47-3 at 310-400.)  They provide, in relevant part:

> The coverage provided under this Agreement is health maintenance organization (HMO) coverage and not indemnity insurance. As an HMO, the Health Plan contracts with only certain providers; therefore, with certain exceptions as explained herein, You and Your Covered Dependents are required to use those providers in order to receive the coverage described. Those providers shall determine the methods used and the form of Treatment to be provided. The Health Plan does not intend that all alternative forms and methods of Treatment will be eligible for coverage. If You or Your Covered Dependents elect to receive Treatment from a non-Health Plan provider, or receive a form of Treatment not authorized by the Health Plan, You may be required to pay for the services provided out of your own pocket.
>                                                        ***
>
> **HEALTH CARE SERVICES**
> **6.1 Health Care Services Within the Service Area**
> You and Your Covered Dependents shall be entitled to the Health Care Services specified in the Schedule of Benefits subject to the conditions and limitations stated in the Schedule of Benefits and this Agreement that are considered to be Medically Necessary by the Medical Director. Except for Emergency Care, approved referrals to Non-Participating Providers, or covered medical services rendered to a Covered Dependent child under a Qualified Medical Support Order who is outside the Service Area, Health Care Services are available only through Participating Providers. Health Plan shall have no liability or obligation whatsoever for any service or benefit sought or received by You or Your Covered Dependents from any other physician, hospital, extended care facility, or other person, institution or organization, unless prior approval for referral has been obtained a Medical Director[.]
>                                                        ***
>
> **CLAIM PROCEDURE**
> **7.1 Necessity of Filing Claims**
> You will not ordinarily need to pay any person or facility for Health Care Services

5

provided under this Agreement. However, if you receive Health Care Services from facilities which do not routinely contract with Health Plan, for example in the case of an emergency, you may be asked to pay that person or facility directly. You are entitled to reimbursement for such payments to the extent those Health Care Services are covered under this Agreement provided (1) You submit written proof of and claim for payment to Health Plan at its office, (2) the written proof and claim for payment are acceptable to Health Plan, (3) Health Plan receives the written proof and claim for payment within 60 days of the date the Health Care Services were received by You and Your Covered Dependent, and (4) You have complied with the terms of this Agreement.

**7.2 Effect of Failure to File Claim Within 60 Days**
Failure to submit written proof of and claim for payment within the 60 day period shall not invalidate or reduce Your entitlement to reimbursement provided it was not reasonably possible for You to submit such proof and claim within the time allowed and written proof of and claim for payment were filed as soon as reasonably possible. Written proof and claim for payment submission should consist of itemized receipts containing: name and address where services were received, date service was provided, amount paid for service, and diagnosis for visit. Claims for reimbursement should be sent to Scott & White Health Plan, Attn: Claims Dept., 2401 South 31st St., Temple, TX 76508. In no event will Health Plan have any obligation under this Agreement if such proof of and claim for payment is not received by Health Plan within one (1) year of the date the services were provided to You or Your Covered Dependent.
*** 

**7.7 Limitations on Actions**
No action at law or in equity shall be brought to recover payment of a claim under this Agreement prior to the expiration of sixty (60) days from the date written proof of and claim for payment, as described above, was received by Health Plan. In no event shall such action be brought after one (1) year from such date.
***

**WHAT'S COVERED?**
**12.5.28 Out-of-Network Referrals**
Except for Emergency Care Services, all services under this Agreement must be provided by Participating Physicians, Participating Providers, or Participating Hospitals, unless a Participating Physician or Provider requests a referral to a non-Participating Physician, Provider or Hospital and such referral receives prior approval by the Health Plan Medical Director. If an out-of-network referral is authorized, Health Plan provides services only to the extent such services are covered under this Agreement. Each out-of-network referral is subject to separate review and approval. For example, an authorization for Treatment by a particular non-Participating Physician does not also authorize hospitalization in a hospital

which is not a Participating Hospital or referral to another physician by the non-Participating Physician. In cases involving a nonemergency, Health Plan will not cover any expenses associated with Treatments performed or prescribed by non-Participating Physicians, Provider, or Hospitals, either inside or outside of the Service Area, for which Health Plan has not authorized an out-of-network referral. Complications of such non-authorized Treatments will not be covered prior to the date Health Plan arranges for You or Your Covered Dependent's transfer to Participating Physicians, Participating Providers, or a Participating Hospital. In no event shall Health Plan cover any Treatments which are excluded from coverage under this Agreement or complications of those Treatments.

***

**EXCLUSIONS AND LIMITATIONS**
**13.23 Non-Emergent Treatment for Non-Participating Providers**
In cases involving non-emergent Treatments performed or prescribed by non-Participating Providers, either inside or outside of the Service Area, and for which Health Plan has not authorized an out-of-network referral, Health Plan will not cover any expenses associated with such Treatments. Complications of those Treatments will not be covered prior to the date Health Plan arranges for Member's transfer to Participating Providers.

(docs. 47-2 at 32, 51, 53-54, 87, 89, 435, 454, 456-57, 490, 492; 47-3 at 311, 330, 332-33, 366, 368.)

The plans define a "Participating Provider" as "any person or entity that has contracted, directly or indirectly, with Health Plan to provide Health Care Services to Members," including "Participating Physicians." (docs. 47-2 at 45, 448; 47-3 at 324.) A "Participating Physician" is "anyone licensed to practice medicine in the State of Texas and who is employed by or has executed a contract with Health Plan to provide Health Care Services." (*Id.*)

On April 30, 2015, Revolution provided services to the first patient covered by an HMO plan. (doc. 51-5.) On September 30, 2015, Revolution submitted a claim for $108,450.00 (Claim 1), and RN submitted a claim for $185,732.00 (Claim 2), to Defendant. (doc. 47-2 at 96-97, 99-101.) Defendant denied Claim 1 on October 1, 2015, because Revolution was not "in network." (doc. 47-4 at 100.) Revolution appealed on October 13, 2015, and Defendant upheld the denial on December 31, 2015. (docs. 47-2 at 112; 47-4 at 94.) Defendant denied Claim 2 on October 22, 2015, because

7

Revolution was not "in network." (doc. 47-6 at 7-8.) RN resubmitted Claim 2 on December 1, 2015, and Defendant again denied it for the same reason. (docs. 47-2 at 102-07; 47-6 at 7-8.)

On May 8, 2015, Revolution provided services to the second patient covered by a HMO plan. (doc. 51-5.)  On August 19, 2015, Revolution submitted a claim for $52,150.00 (Claim 3) to Defendant. (doc. 47-3 at 371-72.)  Defendant denied the claim on September 3, 2015, because Revolution was not "in network." (*Id.* at 382.)  The claim was appealed on October 13, 2015, and Defendant upheld the denial on November 1, 2015. (*Id.* at 374-75, 383.)  On September 30, 2020, Plaintiff submitted a claim for $138,150.00 (Claim 4) on behalf of RN. (doc. 47-4 at 121-37.)

On November 6, 2015, Revolution provided services to the third patient covered by a HMO plan. (doc. 51-5.)  On July 29, 2020, Plaintiff submitted a claim for $57,050.00 (Claim 5) to Defendant. (doc. 47-4 at 104-19.)  Defendant has not received the other claim for services provided to this patient in the amount of $114,658.00 (Claim 6). (docs. 47-6 at 4; 51-5.)

E.    **PPO Plans and Claims**

The PPO plans for all three patients state that the coverage provided under the plan "is indemnity insurance using a preferred provider network." (doc. 47-3 at 3, 109, 195.)  As relevant here, the claim procedure provisions are the same and provide:

> **7.1 Necessity of Filing Claims**
> For Health Care Services obtained from non-Participating Providers, you or the non-Participating Provider must file a claim for reimbursement for directly with Health Plan.
>
> **7.2 Effect of Failure to File Claim Within 90 Days**
> Written proof of loss must be furnished to ICSW at our Temple, Texas, offices, in the case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss, before the 91st day after the termination of the period for which ICSW is liable and in case of claim for any other loss, before the 91st day after the date of such loss. Failure to submit written proof of and claim for payment before the 91st day shall not invalidate or reduce Your entitlement to

8

reimbursement provided it was not reasonably possible for You to submit such proof and claim within the time allowed and written proof of and claim for payment were filed as soon as reasonably possible. Written proof and claim for payment submission should consist of itemized receipts containing: name and address where services were received, date service was provided, amount paid for service, and diagnosis for visit. Claims for reimbursement should be sent to Scott & White Health Plan, Attn: Claims Dept., 1206 West Campus Dr., Temple, TX 76502. Except in the event of legal incapacity, Health Plan has no obligation under this paragraph if such proof of and claim for payment is not received by Health Plan within one (1) year of the date the services were provided to You or Your Covered Dependent.

(*Id.* at 24, 130, 216.)

All the plans state that an adverse determination can be appealed, and that "[t]he timeframe for filing the written or oral response may not be less than 30 calendar days after the date of issuance of written notification of an adverse determination." (*Id.* at 33, 139, 225.)

On February 24, 2016, Revolution provided services to the first patient covered by a PPO plan. (doc. 51-5.)  On April 20, 2016, Revolution submitted a claim for $106,05.00 (Claim 7) to Defendant. (doc. 47-3 at 275-76.) On March 30, 2017, Defendant denied the claim for the following reasons: "duplicate service billed," "not covered as billed," and "charges included in the DRG rate." (doc. 47-3 at 297-98.)  On May 4, 2016, RN submitted a claim for $197,550.00 (Claim 8) to Defendant. (*Id.* at 271-72.) On May 25, 2016, Defendant denied the claim for the following reason: "deny - incidental supplies/service - do not bill patient." (*Id.* at 301.)

On May 13, 2016, Revolution provided services to the second patient covered by a PPO plan. (doc. 51-5.)  On August 29, 2016, Revolution submitted a claim for $34,298.00 (Claim 9)[3] to Defendant. (doc. 47-3 at 185-91.)  Defendant denied the claim on September 8, 2016, as untimely. (*Id.* at 192.) On July 29, 2020, Plaintiff submitted a claim for $168,250.00 (Claim 10) to Defendant

---

[3] The total amount sought by Plaintiff in this lawsuit for Claim 9 is $78,850.00. (*See* doc. 51-5.)

on behalf of Revolution. (doc. 47-5 at 2-25.)

On November 22, 2016, Revolution provided services to the third patient covered by a PPO plan. (doc. 51-5.)  On January 20, 2017, RMM submitted a claim of $11,337.00 (Claim 11) to Defendant. (doc. 47-3 at 85-86.)  On February 9, 2017, Defendant denied it for the following reasons: "current procedure found incidental to another current procedu" and "not covered as billed; see online policy." (*Id.* at 98.)  On July 7, 2017, RMM again submitted Claim 11, but in the amount of $97,497.00.[4]  (*Id.* at 89-90.)  Defendant denied it on July 20, 2017, as untimely. (*Id.* at 95.)  On January 20, 2017, RN submitted a claim for $236,150.00 (Claim 12) to Defendant. (*Id.* at 79-81.)  On February 2, 2017, Defendant denied it, stating: "current procedure found incidental to another current procedu" and "deny - incidental supplies/service - do not bill patient." (*Id.* at 96.)

## F.      ERISA Plan and Claims

Only one patient is covered by an ERISA plan. (docs. 47-2 at 155; 47-6 at 4.)  The ERISA plan contains the following provision:

> **Assigning Your Benefits**
> Your benefits belong to you and under most circumstances may not be sold, transferred, pledged or garnished. However, you may designate beneficiaries to receive your life insurance and AD&D insurance benefits in the event of your death.

(doc. 47-2 at 139, 216-21.)

On December 19, 2016, Revolution provided services to the patient covered by the ERISA plan. (doc. 51-5.)  On July 7, 2017, Revolution submitted a claim for $128,950.00 (Claim 13) to Defendant. (doc. 47-2 at 360-61.)  On July 21, 2017, Defendant denied it for the following reasons: "duplicate service billed" and "charges included in the DRG rate." (*Id.* at 384.)  On January 20,

---

[4]This amount also includes the $11,337.00 requested on January 20, 2017. (doc. 47-3 at 85-86, 89-90.)

2017, RN submitted a claim for $190,800.00 (Claim 14) to Defendant. (*Id.* at 340-42.) On February 9, 2017, Defendant denied the claim for the following reasons: "current procedure found incidental to a procedure in history" and "incidental supplies/service-do not bill patient." (*Id.* at 364.)

On December 21, 2016, Revolution provided services to the same patient. (doc. 51-5.) On May 25, 2017, Revolution submitted a claim for $100,750.00 (Claim 15) to Defendant. (doc. 47-2 at 356-58.) On June 1, 2017, Defendant denied the claim for the following reason: "not covered as billed; see online policy." (*Id.* at 367.) On February 2, 2017, RN submitted a claim for $147,450.00 (Claim 16) to Defendant. (*Id.* at 348-50.) On February 16, 2017, Defendant denied the claim for the following reasons: "current procedure found incidental to another current procedu" and "incidental supplies/service-do not bill patient." (*Id.* at 365.)

## G.   <u>Procedural History</u>

On September 25, 2020, Plaintiff sued Defendant in state court, asserting claims for breach of contract, promissory estoppel, and quantum meruit. (*See* doc. 1-4.) After the case was removed to federal court, Defendant moved to dismiss the claims for promissory estoppel and quantum meruit under Rule 12(b)(6). (*See* doc. 8.) The motion was partially granted, and the quantum meruit claim was dismissed. (*See* docs. 21-22.)

On January 28, 2022, Defendant moved for summary judgment on the remaining claims against it. (*See* docs. 42.) Plaintiff responded on February 18, 2022, and Defendant replied on March 5, 2022. (*See* docs. 50, 57.)[5]

---

[5]Defendant has separately moved to exclude the testimony of three non-retained expert witnesses, (doc. 41 at 4), but the disputed testimony is either not part of the summary judgment record or would not affect the disposition of the motion for summary judgment.

## II.  MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If it "bears the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting an affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted).  There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324.  It must go beyond its pleadings and designate specific facts to show there is a genuine

issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[6]  Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).  Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).  While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### III.  BREACH OF CONTRACT

Defendant moves for summary judgment on Plaintiff's breach of contract claim.  (doc. 43 at 13-36.)

#### A.    Anti-Assignment Provision

Defendant argues that Plaintiff lacks standing to assert a breach of contract claim based on Claims 13-16 because the ERISA plan prohibits any assignment of benefits. (doc. 43 at 13-15.)

---

[6]"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

"[A]lthough '[h]ealthcare providers may not sue in their own right to collect benefits under an ERISA plan,' they 'may bring ERISA suits standing in the shoes of their patients' by showing that they have received assignments of rights from their patients." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 742 (5th Cir. 2015) (quoting *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015)).  It is well established, however, that "when an ERISA plan contains a valid anti-assignment provision, a putative assignment to a healthcare provider is invalid and cannot bestow the provider with standing to sue under the plan." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (citing *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352-53 (5th Cir. 2002)).  "Whether an anti-assignment clause voids or invalidates an assignment of benefits depends on the court's application of 'universally recognized canons of contract interpretation to the plain wording of the ... anti-assignment clause' at issue." *Encompass Off. Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2017 WL 3268034, at *12 (N.D. Tex. July 31, 2017) (quoting *LeTourneau Lifelike*, 298 F.3d at 352). "[W]hen construing an anti-assignment clause, 'any ambiguities will be resolved against the [p]lan.'" *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (quoting *Dallas Cnty. Hosp. Dist. v. Associates' Health & Welfare Plan*, 293 F.3d 282, 288 (5th Cir. 2002)).

Here, the patient covered by the ERISA plan executed two AOBs prior to receiving medical services from Revolution. (doc. 47-5 at 40-41.)  Defendant argues that the ERISA plan "has a valid and enforceable anti-assignment provision prohibiting assignments from the patient to the provider." (doc. 43 at 13.)  It provides a copy of the ERISA plan and cites to the following provision:

> **Assigning Your Benefits.**
> Your benefits belong to you and under most circumstances may not be sold,

transferred, pledged or garnished.

(docs. 43 at 14; 47-2 at 139.)

Defendant argues that in *MedARC, LLC v. Meritain Health, Inc.*, No. 3:20-CV-3281-N-BH, 2021 WL 5762810 (N.D. Tex. Nov. 12, 2021), *adopted sub nom.*, 2021 WL 5760571 (N.D. Tex. Dec. 3, 2021), the Court found that a "nearly identical anti-assignment clause" barred the assignment of legal rights to Plaintiff. (doc. 43 at 14.)   The anti-assignment provision in that case stated:

> No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge and any attempt to do so shall be void. No benefit under the Plan shall in any manner be liable for or subject to the debts, contracts, liabilities, engagements or torts of any person.

2021 WL 5762810, at *7.  The anti-assignment provision in *Meritain* did not leave room for any exceptions to assigning benefits and specifically excluded assignment. *See id.*  The provision in this case does not unambiguously prohibit the assignment of all benefits. (doc. 47-2 at 139.) Although the ERISA plan states that benefits  may not be assigned "under most circumstances," Defendant has not shown that the assignment of benefits to Revolution under the AOBs constitutes one of the "circumstances" where benefits "may not be sold, transferred, pledged or garnished." (*See* docs. 43 at 14; 47-2 at 139.)

Because Defendant fails to show that the ERISA plan's anti-assignment provision prohibits the assignment of benefits relating to Claims 13-16, its motion for summary judgment on this ground is denied.

## B.   <u>Unauthorized Claim Submissions</u>

Defendant argues that Claims 2, 4, 5, 8, 9, 11, 12, 14, and 16 must be dismissed because they were submitted by RN or RMM, and there is no evidence that either entity was authorized to submit the claims. (docs. 43 at 15; 47-2 at 4-5, 9-12, 14-19, 26-27, 29.)  It points to the AOBs executed by

the patients as evidence that Revolution was the only entity authorized to submit claims to their health insurance provider. (doc. 47-5 at 34-41.)

Although the AOBs assign benefits to Revolution and do not expressly mention RN or RMM, the summary judgment evidence demonstrates that RN and RMM were wholly owned by Revolution and were created and authorized by it to submit claims for medical services. (*See* doc. 51-1 at 2.)  In *Aetna Inc. v. People's Choice Hosp., LLC*, No. SA-18-CV-00323-OLG, 2019 WL 12536914, at *5 (W.D. Tex. Sept. 30, 2019), the court rejected the insurer's argument that a medical provider with AOBs from patients lacked statutory standing to bring the ERISA claims simply because they had been submitted through an intermediary and not directly by the provider.

Defendant contends that "Texas law does not permit a party to assert claims on behalf of others which have not been assigned to that party," and that "a person who is not a party to an assignment lacks standing to contest it," but it fails to explain why its evidence impacts Plaintiff's standing to sue for breach of contract in connection with those claims. (doc. 43 at 16.)[7]  Plaintiff is the collection agent for the liquidated trust created as part of the Revolution Bankruptcy, and it is pursuing the claims that Revolution Entities have against Defendant, which belong to the liquidating trust. (*See* doc. 1-4.)

Defendant has not met its burden to show it is entitled to summary judgment on Claims 2,

---

[7]"It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthodpedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, the dispute concerns health insurance plans issued to Texas residents, and Plaintiff's claims arose in whole or in part in Texas. (doc. 1-4.); *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance); *Escalon v. World Group Sec., Inc.*, No. 5:07-CV-214-C, 2008 WL 5572823, at *8 (N.D. Tex. Nov. 14, 2008) ("Under Texas law, the buying and selling corporations' purchase agreement's choice of law provision controls the applicability of successor liability doctrines."). The parties do not dispute that Texas law applies.

4, 5, 8, 9, 11, 12, 14, and 16 because they are unauthorized claim submissions, and its motion for summary judgment on this ground is denied.

## C.   ERISA Preemption

Defendant argues that it is entitled to summary judgment on Claims 13-16 because they are preempted by ERISA. (docs. 43 at 17; 57 at 19.)[8]

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). To achieve this, Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).  The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001). "A state cause of action relates to an employee benefit plan whenever it has 'a connection with or reference to such plan.'" *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 945 (5th Cir. 1995) (citations omitted).  "Under Fifth Circuit precedent, to determine whether a state law relates to a plan for purposes of ERISA preemption, the court asks '(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and

---

[8]Defendant initially sought summary judgment on Claims 13-16 because Plaintiff "never amended its pleadings to assert a § 502(a)(1)(B) ERISA claim after removal." (doc. 43 at 17.)  Plaintiff construed this argument as seeking summary judgment on ERISA preemption grounds and responded. (doc. 50 at 15-17.)  In its reply, Defendant clarified that it is moving for summary judgment to dismiss Claims 13-16 "on the basis of ERISA preemption." (doc. 57 at 19.)  While courts generally do not consider arguments raised for the first time in a reply brief, Plaintiff fully addressed the ERISA preemption issue in its response. *See Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (noting practice of declining to consider arguments raised for the first time in a reply brief because non-movant should be given a fair opportunity to respond to the motion) (citing *Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990)). Because Plaintiff has had the opportunity to address the argument, it is considered.

beneficiaries.'" *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 417 (5th Cir. 2008) (quoting *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)).

Here, Plaintiff asserts a breach of contract action "as an assignee to recover benefits due under Texas state law," alleging it "is entitled to recover benefits for medical services provided by Revolution to patients from whom Revolution received an Assignment of Benefits." (doc. 1-4 at 11.) Defendant argues that Claims 13-16 seek ERISA benefits and affect the relationship between the ERISA plan and the plan participant. (doc. 57 at 19-20.)  It is well established that ERISA preempts state-law claims that are "dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the [ERISA] plan." *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 954-55 (5th Cir. 1999) (citing cases).  Courts in this circuit have specifically held that "breach of contract claims based on [an insurer's] alleged failure to pay the full amount of benefits due under the terms of the [ERISA] policy are preempted." *Id.* at 955; *see Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290-91 (5th Cir.1988) (affirming district court's dismissal on ERISA preemption grounds of hospital's state-law breach of contract claims arising out of assignment of patient's rights under health care policy); *St. Luke's Episcopal Hosp. v. Louisiana Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *12 (S.D. Tex. Jan. 6, 2009) ("Because St. Luke's breach of contract theory is now premised on its contractual rights under the health insurance policy as an assignee, ERISA preempts the state-law breach of contract claim.").  Defendant has satisfied its initial summary judgment burden in showing that the breach of contract claim based on Claims 13-16 is preempted by ERISA.

Plaintiff argues that its breach of contract claim based on Claims 13-16 does not relate to the ERISA plan and instead "relates to [its] duty, as the appointed collection agent of the bankruptcy

trustee, to recover the outstanding amounts owed to Revolution to pay Revolution's creditors." (doc. 50 at 16.)  Even though Plaintiff brings this action on behalf of the liquidating trustee of the bankruptcy estate, "[f]or purposes of ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank Of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243 (5th Cir. 2006).  "[T]he critical determination [is] whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." *Id.* (quoting *Hobson v. Robinson*, 75 F. App'x 949, 955 (5th Cir. 2003)).

As discussed, Plaintiff's breach of contract claim for Claims 13-16 is based on ERISA benefits assigned to Revolution; it seeks payment for medical services rendered in accordance with the terms of the health benefit plans.  (*See* doc. 1-4 at 12-13.)  A claim brought by a medical provider against an insurer as an assignee of an insured's right to receive benefits under the ERISA plan plainly "dependent[s] on or derive[s] from" the terms of the health insurance plan, and clearly affects the relationship among the standard ERISA entities. *See Transitional*, 164 F.3d at 954-55. Plaintiff fails to explain why ERISA does not preempt claims belonging to a bankruptcy estate or trust; nor does it cite legal authority in support.

Because no genuine dispute of material fact exists as to whether Plaintiff's breach of contract claim based on Claims 13-16 is preempted by ERISA, Defendant it is entitled to summary judgment as a matter of law on this claim.[9]

---

[9]Defendant also moves for summary judgment on grounds that Claims 13-16 are barred by the statute of limitations, that there is no evidence that the denial of those claims was an abuse of discretion, and that there is no evidence of administration exhaustion as to those claims. (*See* doc. 43 at 24-26, 29-30, 34-36.)  Because the breach of contract claim based on Claims 13-16 is otherwise subject to dismissal, it is unnecessary to reach these arguments.

D.      **Untimely Claim Submissions**

Defendant argues that Claims 4-6 and 9-10 and part of Claim 11 must be dismissed because they are untimely.  (doc. 43 at 18.)

Under Texas law, "[a] condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (citation omitted).  "When a promise or obligation is subject to a condition precedent, there is no liability or obligation on the part of the promisor and there can be no breach of contract by the promisor unless and until the condition precedent is performed or occurs." *Fuller v. State Farm Mut. Auto. Ins. Co.*, 971 F. Supp. 1098, 1101 (N.D. Tex. 1997), *aff'd by* 141 F.3d 1165 (5th Cir. 1998) (citation omitted).  "Texas courts interpret insurance policy notice requirements as conditions precedent to coverage." *Flores v. Allstate Tex. Lloyd's Co.*, 278 F. Supp. 2d 810, 815 (S.D. Tex. 2003).

"Although, generally, an insurer has the right to demand strict performance of a notice provision before it is liable on a policy, 'Texas law has qualified this right in various contexts by requiring the insurer to prove that the lack of notice prejudiced it.'" *Faith Temple Church of God in Christ v. Church Mut. Ins. Co.*, No. 1:17-CV-435, 2018 WL 9869610, at *4 (E.D. Tex. Oct. 17, 2018) (citing *Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 76 (5th Cir. 2015)).  An insured's failure to submit timely notice of a claim "does not defeat coverage if the insurer was not prejudiced by the delay." *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008).  The notice-prejudice rule is based on the principle that "one party is excused from performing under a contract only if the other party commits a material breach." *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 767 (Tex. 2014).  "[F]or an insured's breach to defeat coverage, the breach must prejudice the

insurer in some tangible way." *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, 690 F.3d 342, 349 (5th Cir. 2012) (citing *PAJ*, 243 S.W.3d at 636-37). "[W]hile the existence of prejudice is 'generally a question of fact,' the court may decide the issue on summary judgment 'if the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations.'" *Charter Sch. Sols. v. GuideOne Mut. Ins. Co.*, 407 F. Supp.3d 641, 651 (W.D. Tex. 2019) (citation omitted).

The Fifth Circuit has recognized that the Texas Supreme Court follows the "modern trend in favor of requiring proof of prejudice" in insurance contracts. *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627, 631 (5th Cir. 1997) (citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)); *see PAJ*, 243 S.W.3d at 634 ("[C]ourts and several major treatises have acknowledged Texas as a state that has adopted a notice-prejudice rule."); *see also E. Texas Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, No. 6:04-CV-165, 2011 WL 773452, at *6 (E.D. Tex. Feb. 25, 2011) ("Texas has morphed into a strict notice-prejudice jurisdiction in which an insurer must show prejudice in nearly all cases to avoid coverage following untimely notice."). At least one district court has applied Texas' notice-prejudice rule to ERISA-regulated plans. *See Garcia v. Best Buy Stores L.P.*, No. CIV.A. H-07-851, 2009 WL 2982788, at *9 (S.D. Tex. Sept. 10, 2009), *aff'd by* 416 F. App'x 384 (5th Cir. 2011).

### 1.    *Claims 9 and 10*

Defendant argues that it is entitled to summary judgment dismissing Claims 9 and 10 because timely submission of claims is a condition precedent under the patient's PPO plan, and there is no genuine issue of material fact that Revolution did not timely submit those claims. (doc. 43 at 18.)

The PPO plan expressly states that "[f]or Health Care Services obtained from non-Participating Providers, you or the non-Participating Provider must file a claim for

21

reimbursement for directly with Health Plan." (doc. 47-3 at 130.)   It contains the following

provision:

> **7.2 Effect of Failure to File Claim Within 90 Days**
> *Written proof of loss must be furnished to ICSW at our Temple, Texas, offices*, in the case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss, before the 91st day after the termination of the period for which ICSW is liable and in case of claim for any other loss, *before the 91st day after the date of such loss. Failure to submit written proof of and claim for payment before the 91st day shall not invalidate or reduce Your entitlement to reimbursement provided it was not reasonably possible for You to submit such proof and claim within the time allowed and written proof of and claim for payment were filed as soon as reasonably possible.* Written proof and claim for payment submission should consist of itemized receipts containing: name and address where services were received, date service was provided, amount paid for service, and diagnosis for visit. Claims for reimbursement should be sent to Scott & White Health Plan, Attn: Claims Dept., 1206 West Campus Dr., Temple, TX 76502. Except in the event of legal incapacity, *Health Plan has no obligation under this paragraph if such proof of and claim for payment is not received by Health Plan within one (1) year of the date the services were provided to You or Your Covered Dependent.*

(*Id.* (emphasis added).)   This provision makes the timely submission of the claim a condition

precedent to recovery under the plan. *See Flores*, 278 F. Supp.2d at 815.

Defendant provides evidence showing that Revolution rendered medical services on May

13, 2016, and that it received Claim 9 on August 29, 2016, and Claim 10 on July 29, 2020. (docs.

47-3 at 187; 47-5 at 3.)   It argues that both claims were untimely because they needed to be

submitted within 90 days of the service, or by August 13, 2016, under the terms of the PPO plan.

(doc. 43 at 20-21.)   Defendant fails to address, or show, how it has been prejudiced from the

untimely submissions, however. *See Hanson*, 108 F.3d at 631; *PAJ*, 243 S.W.3d at 634.   As

discussed, "the Fifth Circuit has recognized a modern trend in the case law away from the traditional

contractual approach towards a view that considers prejudice to an insurer a relevant factor in

determining whether to enforce a condition precedent to insurance coverage." *St. Paul Guardian Ins.*

*Co. v. Centrum G.S. Ltd.*, 383 F. Supp.2d 891, 901 (N.D. Tex. 2003) (citing *Hanson*, 108 F.3d at 631). To be excused from performance and prevail on summary judgment, Defendant must establish there is no dispute of material fact that Revolution breached the notice provision and that it was prejudiced as a result. *See PAJ*, 243 S.W.3d at 636-37; *Berkley*, 690 F.3d at 349.

Because Defendant has failed to demonstrate that it was prejudiced under Texas law by Revolution's late submission of Claims 9 and 10, it is not entitled to summary judgment on its untimely notice argument. *See St. Paul*, 383 F. Supp.2d at 904 (denying summary judgment on insurer's late notice defense because it failed to establish prejudice sufficient to excuse performance); *see, e.g., 2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, No. 3:17-CV-2795-D, 2019 WL 1583558, at *8 (N.D. Tex. Apr. 12, 2019) ("Mount Vernon has not established beyond peradventure that it was prejudiced by plaintiffs' 11-month delay in providing notice of their claim.").

### 2. Claims 4-6 and part of Claim 11

Plaintiff concedes that Claims 4-6 and part of Claim 11 were not timely submitted, and that its "breach of contract claim should be dismissed as it relates to those claims." (doc. 50 at 17.) Defendant's motion for summary judgment as to Plaintiff's breach of contract claim based on Claims 4-6 and part of Claim 11 is granted, and they are dismissed.

### E.   Failure to Exhaust Administrative Remedies

Defendant argues that it is entitled to summary judgment on Claims 7, 8, and 12 and the remainder of Claim 11 because there is no evidence that Revolution timely appealed those claims. (doc. 43 at 21-22.)

As discussed, Claims 7, 8, 11, and 12 are for services provided to patients covered by PPO

plans. (*See* doc. 51-5.)  Defendant argues that the PPO plans require that an appeal be filed within

30 days of an adverse determination and cites the following provision in support:

> **10.5 Appeal of Adverse Determinations**
> 10.5.1 A Covered Person, a person acting on behalf of the Covered Person, or the
> Covered Person's physician or health care provider may appeal an Adverse
> Determination orally or in writing to a Member Relations Coordinator. The
> timeframe for filing the written or oral response may not be less than 30 calendar
> days after the date of issuance of written notification of an adverse determination. In
> addition, if the timeframes for the "Appeal of Adverse Determination" are not met
> by Health Plan, the enrollee is entitled to an immediate Appeal to an Independent
> Review Organization. The Health Plan will not require an exhaustion of its internal
> appeals prior to external review if Health Plan fails to meet its internal appeals
> process timelines or the claimant with an urgent care situation files an external
> review before exhausting the internal appeals process. Health Plan will send an
> acknowledgment letter of the receipt of oral or written Appeal of Adverse
> Determination from Complainants no later than five (5) business days after the date
> of the receipt of the Appeal. The acknowledgment letter will include a description
> of Health Plan's appeal procedures and time frames, as well as a reasonable list of
> documents needed to be submitted by the Complainant for the Appeal. If the Appeal
> is received orally, the Health Plan will also enclose a one-page Appeal form, the
> return of which, while not required, will aid in the prompt resolution of the Appeal.

(doc. 47-3 at 33, 139, 225.)

While this provision demonstrates that there is an internal appeal process for adverse

determinations under the plans, it does not state that it is a mandatory procedure for the denial of

plan benefits.  It simply provides that a covered person *may* appeal an adverse determination.

Defendant has not cited to plan language expressly requiring the administrative exhaustion of a

claim for denied benefits.  Although administrative exhaustion is required for plans governed by

ERISA, Defendant has not provided any legal authority that support extending ERISA's exhaustion

requirements to non-ERISA plans. *See McGowin v. Manpower Int'l, Inc.*, 363 F.3d 556, 559 (5th

Cir. 2004) ("Claimants seeking benefits from an *ERISA plan* must first exhaust available

administrative remedies under the plan before bringing suit to recover benefits.") (emphasis added).

Because Defendant has failed to show that administrative exhaustion is mandatory under the PPO plans, its motion for summary judgment on the ground of administrative exhaustion is denied as to Claims 7, 8, and 12 and the remainder of Claim 11.

**F.     Time-Barred Claims**

Defendant argues that it is entitled to summary judgment on Claims 1-3 because there is no genuine issue of material fact that Plaintiff did not file this lawsuit timely. (doc. 43 at 26-28.)

Under Texas law, "the statute of limitations for the breach of an insurance contract action is four years from the day the cause of action accrues." *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 373 (5th Cir. 2011) (citing Tex. Civ. Prac. & Rem.Code § 16.051).  "However, the parties may contractually agree to shorten the limitations period for a breach of contract claim so long as the agreement does not limit the time in which to bring suit to a period shorter than two years." *Abedinia v. Lighthouse Prop. Ins. Co.*, No. 12-20-00183-CV, 2021 WL 4898456, at *2 (Tex. App.—Tyler Oct. 20, 2021, pet. filed); *see* Tex. Civ. Prac. & Rem. Code § 16.070(a) ("[A] person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring a suit on the stipulation, contract, or agreement to a period shorter than two years.").  "A provision in an insurance contract that establishes a limitations period shorter than two years is void." *Spicewood Summit Office Condominiums Ass'n, Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 466 (Tex. App.—Austin 2009, pet. denied) (citing Tex. Civ. Prac. & Rem. Code § 16.070(a)).

Section 108(a) of the Bankruptcy Code acts as a tolling provision and "allows a trustee to commence an action in a nonbankruptcy proceeding within the period allowed for such proceeding or within two years after the order for relief, whichever is later." *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 259 (5th Cir. 1991) (citing 11 U.S.C. § 108(a)) (emphasis

25

omitted).  Section 108(a) therefore "extend[s] the prescription period for prepetition claims to two

years after entry of the order for relief." *Matter of Phillip*, 948 F.2d 985, 987 (5th Cir. 1991).  "The

purpose of section 108(a) dictates the conclusion that its rights extend only to trustees and

debtors-in-possession, and not to creditors. This is so because both trustees and

debtors-in-possession have a fiduciary obligation to 'all the creditors of the bankrupt.'" *C.I.T. Const.*

*Inc. of Texas*, 944 F.2d at 260 (citation omitted).

Here, Defendant provides the HMO plans corresponding to Claims 1-3, and points to the

following provision:

> No action at law or in equity shall be brought to recover payment of a claim under
> this Agreement prior to the expiration of sixty (60) days from the date written proof
> of and claim for payment, as described above, was received by Health Plan. In no
> event shall such action be brought after one (1) year from such date.

(docs. 47-2 at 54, 47-3 at 333.)  Because this provision provides for a limitations period to file suit

that is less than two years, it is void under Texas law. *See* Tex. Civ. Prac. & Rem. Code § 16.070(a).

Plaintiff's breach of contract claim based on Claims 1-3 is therefore governed by Texas' four-year

statute of limitations. *See id.* § 16.051; *see, e.g., Spicewood*, 287 S.W.3d at 466 (applying four-year

limitations period to breach of contract claim because the contractual limitations provision in the

insurance contract had the "practical effect of providing a period in which to file suit that is less than

two years").

In Texas, a cause of action for breach of contract generally accrues at the time of the breach.

*Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).  The summary judgment evidence shows that

Defendant upheld the denial of Claim 1 on December 31, 2015; it denied Claim 2 on December 21,

2015; and it upheld the denial of Claim 3 on November 1, 2015.  (*See* docs. 47-2 at 112; 47-3 at 383;

47-6 at 8.)  The four-year statute of limitations for the earliest claim would have expired on

November 1, 2019. *See* Tex. Civ. Prac. & Rem. Code § 16.004; *Hogan*, 969 F.2d at 145. As discussed, Revolution Entities filed for bankruptcy on September 27, 2018, which was over one year before the expiration date to assert a breach of contract cause of action for the earliest medical claim. Because the prescriptive period had not expired before the filing date of the bankruptcy petition, § 108(a) extended the prescriptive period by two years, until September 27, 2020. *See Matter of Phillip*, 948 F.2d at 987. Plaintiff filed this lawsuit against Defendant on September 25, 2020. (*See* doc. 1-4.)

Because the summary judgment evidence demonstrates that suit on Claims 1-3 was filed within the limitations period, summary judgment on those claims as time-barred is denied.

**G.    No Breach of Plan Terms**

Defendant moves for summary judgment on Claims 1-3, 7, 8, and 12 and the remainder of Claim 11, arguing there is no evidence that it breached the plans' terms. (doc. 43 at 31-34.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)). Under Texas law, the party seeking to recover for breach of an insurance contract bears the initial "burden of establishing coverage under the terms of the policy." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *see also Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("[I]n the context of an insurance policy, a plaintiff must prove the existence of a valid insurance policy covering the denied claim and entitlement to money damages

27

on that claim."). Once general coverage is established, the burden then shifts to the insurer to show

that an exclusion applies and negates coverage. *JAW The Pointe, L.L.C. v. Lexington Ins.*, 460

S.W.3d 597, 603 (Tex. 2015). "If the insurer proves that an exclusion applies, the burden shifts back

to the insured to show that an exception to the exclusion brings the claim back within coverage."

*Gilbert*, 327 S.W.3d at 124.  "Insurance policies and plans are interpreted according to the same

rules of contract construction as other contracts, except that an insurance policy is 'construed strictly

against the insurer and liberally in favor of the insured' when the terms of the policy are ambiguous

or when dealing with exceptions and words of limitation." *Connecticut Gen. Life*, 2017 WL

3268034, at *24 (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665-66 (Tex. 1987)).

### 1.     *Claims 1-3*

Defendant argues that the summary judgment evidence demonstrates that Claims 1-3 were

properly denied because the HMO plans do not provide coverage for out-of-network services

without prior authorization. (doc. 43 at 31.) It points to the "What's Covered?" section of the HMO

plans, which states: "[A]ll services under this Agreement must be provided by Participating

Physicians, Participating Providers, or Participating Hospitals, unless a Participating Physician or

Provider requests a referral to a non-Participating Physician, Provider or Hospital and such referral

receives prior approval by the Health Plan Medical Director." (docs. 47-2 at 87; 47-3 at 366.)  It

provides evidence showing that Claims 1-3 were denied because Revolution was not an "in-

network" provider.  (docs. 47-3 at 382; 47-4 at 100; 47-6 at 7-8.)  Defendant argues that the

summary judgment evidence establishes that it did not breach the terms of the HMO plans when it

denied Claims 1-3 because there is no genuine issue of material fact that Revolution was not an in-

network provider. (doc. 43 at 32-33.)  By pointing to evidence demonstrating that the services for

28

Claims 1-3 are not covered by the plans, Defendant has met its summary judgment burden on the breach of contract claim as to those claims.

The burden now shifts to Plaintiff to identify evidence raising a genuine issue of material fact regarding whether Claims 1-3 are covered under the HMO plans.  Plaintiff does not dispute that Revolution was an out-of-network provider, and instead contends that it obtained the proper referrals from a Participating Physician, as well as the prior authorizations necessary for out-of-network services for Claims 1-3. (doc. 50 at 22.)  It provides the health insurance claim forms and surgery consent forms for Claims 1-3 that were signed by the patients and the physician who requested Revolution's services, and notes that the requesting physician is identified as a "Participating Physician or Provider" on Defendant's website. (docs. 50 at 22; 51-7.)  It generally alleges that the surgeon's office, or some other administrative office, submitted the signed forms to the insurance company for pre-approval before the surgery for Claims 1 and 2. (doc. 50 at 23.)  It also provides an unauthenticated document titled "Re-verification For Revolution Mon." for Claim 3, which it contends was filled out by a billing agent who called Defendant's insurance agent after the patient's surgery. (docs. 50 at 23; 51-8.)

Plaintiff has provided evidence showing that the services provided by Revolution for Claims 1-3 were referred by a Participating Physician, but it has not cited to admissible evidence in the record permitting an inference that Revolution obtained prior approval from Defendant for those claims.  As discussed, the HMO plans cover medical services provided by an out-of-network provider only if (1) there was a referral by a Participating Physician or Provider and (2) prior approval was *received* by the Heath Plan Medical Director. (*See* docs. 47-2 at 87; 47-3 at 366.) The fact that the health insurance claim forms and surgery consent forms for Claims 1 and 2 were

submitted to Defendant for pre-approval does not, without more, create a genuine fact issue regarding *receipt* of prior approval.  Additionally, the unauthenticated "Re-verification" form for Claim 3, which is not competent summary judgment evidence, objectively fails to show that Defendant pre-approved Revolution's services for Claim 3. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence."); *see also ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) ("[T]o defeat a properly supported motion for summary judgment, the nonmoving party must direct the court's attention to *admissible* evidence in the record which demonstrates that it can satisfy a 'fair-minded jury' that it is entitled to a verdict in its favor.") (emphasis added).

Because Plaintiff has not identified summary judgment evidence demonstrating that Defendant breached the HMO plans when it denied benefits for Claims 1-3, Defendant's motion for summary judgment on Plaintiff's breach of contract claim under Claims 1-3 is granted.

### 2.    *Claims 7, 8, and 12 and remainder of Claim 11*

As discussed, to recover for a breach of insurance contract, the plaintiff must show that the insurer actually breached that contract. *See Price v. Dearborn Nat'l Life Ins. Co.*, No. SA-15-CV-369-XR, 2016 WL 5794800, at *3 (W.D. Tex. Oct. 3, 2016) (citing *U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 215 (Tex. App.—San Antonio 2012, pet. denied)).  As the assignee of each patient's benefits, Plaintiff must establish that the claims are covered under the plans. *Id.*

Defendant argues that there is no evidence that it breached the terms of the PPO plans when it denied Claims 7, 8, and 12 and the remainder of Claim 11. (doc. 43 at 33-34.)  It provides the letters sent to Revolution for those claims, explaining why the claims were denied. (doc. 47-3 at 96, 98, 297-98, 301.)  By pointing out the need for, and lack of, evidence of contractual breach, it has

met its summary judgment burden.

The burden now shifts to Plaintiff to identify evidence in the record showing that Defendant breached the terms of the PPO plans by denying Claims 7, 8, and 12 and the remainder of Claim 11. It must "go beyond the pleadings" and point out "specific facts" to show that there is a genuine issue of fact. *See Celotex*, 477 U.S. at 324. Plaintiff argues that during discovery it produced "the Health Insurance Claim Forms for Claim Nos. 7, 8, 11, and 12, which list the date of service, the name of the referring physician, the CPT codes for the services provided, and the costs of Revolution providing those services" along with evidence of its "appeals for outstanding amounts for the services rendered for all of the claims." (doc. 50 at 24.) It provides a summary of the "usual, customary, and reasonable" charges and payment amounts for the services Revolution provided to each patient. (*See* doc. 51-5.)

Plaintiff has not pointed to evidence from which a fact-finder could reasonably conclude that Defendant had breached plan terms when it denied Claims 7, 8, and 12 and the remainder of Claim 11. It does not identify the specific provisions within the plans that cover the services provided by Revolution in connection with those claims, or the plan terms that Defendant breached. While Plaintiff generally contends that it has produced sufficient evidence during discovery to create a factual controversy related to Defendant's breach of the plan's terms, it has not identified or pointed to that specific evidence. (*See* doc. 50 at 24.) As noted, courts are under no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *See Adams*, 465 F.3d at 164 (quoting *Ragas*, 136 F.3d at 458) (explaining that the responding party on summary judgment must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]"); *see also Armstrong*

*v. Boehringer Ingelheim Pharms., Inc.*, No. 3:08-CV-1458-O, 2010 WL 2540751, at *3 (N.D. Tex.

June 21, 2010) ("The Fifth Circuit established almost thirty years ago that '[j]udges are not ferrets'

under Rule 56. The Fifth Circuit has more recently reiterated that '[j]udges are not like pigs, hunting

for truffles buried in briefs.'") (internal citations omitted).

Because Plaintiff fails to present evidence creating a genuine dispute of material fact that

Defendant's denial of Claims 7, 8, and 12 and the remainder of Claim 11 breached the PPO plans,

Defendant is entitled to summary judgment on those claims.

## IV.  PROMISSORY ESTOPPEL

Defendant moves for summary judgment on Plaintiff's promissory estoppel claim. (doc. 43

at 36.)

Although normally a defensive theory, promissory estoppel is also available as a cause of

action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable

promise. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 761 (N.D. Tex. 2012);

*Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex.App.–El Paso 2004, no pet.).

To survive summary judgment on a claim for promissory estoppel, the nonmovant must show: "(1)

a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the

promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th

Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). The alleged promise

"must be sufficiently specific and definite so that it would be reasonable and justified for the

promisee to rely on it as a commitment to future action." *Davis v. Tex. Farm Bureau Ins.*, 470

S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2015, no pet.).  Texas courts have emphasized that

promises that are vague and indefinite cannot support a claim for promissory estoppel. *See Gilmartin*

*v. KVTV–Channel 13*, 985 S.W.2d 553, 558 (Tex.App.—San Antonio 1998, no writ) (explaining that vague and indefinite promises are not actionable promissory estoppel claims); *see also Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998) (concluding that a plaintiff may not reasonably or justifiably rely on an indefinite promise).

To meet its summary judgment burden, Defendant points to the absence of evidence showing that it promised Revolution that its IOM services were covered by the patients' insurance plans, and that it would be paid a reasonable amount for providing those services. (doc. 43 at 38.)  In pointing out the need for and lack of evidence on this necessary element, Defendant has met its summary judgment burden. *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiffs to identify evidence in the record that raises a genuine issue of material fact regarding whether Defendant promised Revolution that its medical services were covered by the plans and that it would be paid a reasonable amount.  Plaintiff argues that Revolution "received verification via telephone that each of the patients were covered under the plans and that Revolution would be paid a reasonable amount for the services that it would be performing on the insureds." (doc. 50 at 28.)  In support of this allegation, Plaintiff provides the surgery consent forms for each patient that are signed by the surgeon and patient and includes Revolution's services, and it asserts that the forms were submitted to Defendant for pre-approval prior to the surgeries. (*See* doc. 51-7.)  It provides the "pre-authorization" forms for two patients that list Revolution's services, and it points out the pre-certification or authorization numbers for the surgeries. (*See* doc. 51-12.)  It also provides the "face sheets" forms for four patients that were created when the patient was admitted to the hospital for surgery, and points to the certification or authorization numbers from Defendant. (*See* doc. 51-13.)

The evidence provided by Plaintiff is insufficient to create a material fact issue as to whether Defendant made a promise sufficiently definite to be reasonably relied upon by Revolution. *See Davis*, 470 S.W.3d at 108.  Plaintiff points to no clear and definite statements from Defendant guaranteeing that Revolution's medical services would be covered by each patient's health insurance plan, or that it would be paid a reasonable amount for providing such services. *See Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F. Supp.2d 814, 843 (N.D. Tex. 2010) (granting summary judgment motion to dismiss promissory estoppel claim because nonmovat failed to point to evidence that would permit a reasonable jury to find defendants made a promise to pay certain costs).  While the patient forms indicate that there were communications between Revolution and Defendant regarding the patients' medical procedures and health insurance coverage, there is no evidence of the content of those communications. *See, e.g., DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2018 WL 3388780, at *11 (S.D. Tex. July 12, 2018) (concluding that insurer was entitled to summary judgment on promissory estoppel claim because telephone calls made by plaintiff's billing agents to insurer to verify insurance benefits, without evidence of the content of those conversations, was insufficient evidence to create a genuine issue of material fact that insurer had "made any guarantees of payments or representations of coverage to them beyond the health care plans").

Because Plaintiff fails to identify evidence showing that Defendant specifically promised that Revolution's services were covered by the patients' health insurance plans and that it would be paid a reasonable amount for providing such services, Defendant is entitled to summary judgment dismissing Plaintiff's claim for promissory estoppel.[10]

---

[10]Because Defendant is entitled to summary judgment on the promissory estoppel claim, it is unnecessary to consider its remaining arguments for summary judgment as to this claim. (*See* doc. 43 at 38-41.)

## V.  CONCLUSION

Defendant's motion for summary judgment is **GRANTED in part**, and Plaintiff's claim for breach of contract with respect to Claims 1-8 and 11-16 and its claim for promissory estoppel are **DISMISSED with prejudice**.   The motion is otherwise **DENIED**, and remaining for trial is Plaintiff's claim for breach of contract with respect to Claims 9 and 10.

**SO ORDERED** this 1st day of August, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE