IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEDARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC,<br>           Plaintiff,<br><br>v.<br><br>SCOTT AND WHITE HEALTH PLAN,<br>           Defendant. | §§§§§§§§§§§§§ | <br><br><br><br><br><br><br>Civil Action No. 3:20-CV-3241-BH<br><br><br>Consent Case[1] |

**MEMORANDUM OPINION AND ORDER**

Based upon the relevant filings, evidence, and applicable law, *Defendant's Motion to Exclude Testimony of Plaintiff's Expert Witness under Federal Rule of Evidence 702*, filed January 28, 2022 (doc. 40), is **DENIED**.

**I. BACKGROUND**

MedARC, LLC, as Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (Plaintiff), brings this action against Scott and White Health Plan (Defendant), to recover payments for out-of-network medical services rendered to patients covered by health insurance plans. (*See* doc. 1-4 at 1-2.)[2] Prior to bankruptcy, Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (collectively Revolution) were medical providers of intraoperative neurophysiological monitoring (IONM)

---

[1] By consent of the parties and the order of transfer dated January 24, 2022 (doc. 39), this case has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

medical services for operations around delicate parts of the nervous system. (*Id.* at 3.)[2] IONM technology provides "real-time" monitoring of the state of the nervous system during surgery, which alerts surgeons of potential evolving neurologic injury in order to allow for corrective actions to avoid permanent injury or death. (*Id.* at 4.) These medical services were performed by teams of seasoned professionals, and were primarily utilized in spinal, cranial, facial, throat, and peripheral surgeries. (*Id.* at 3-4.)

According to the original petition, Revolution provided IONM medical services to patients covered by health insurance plans insured or administered by Defendant. (*Id.* at 6.) These medical services were utilized in connection with each patient's surgical procedure, and were ordered by the patient's surgeon. (*Id.*) After Revolution provided the medical services, Defendant failed to properly reimburse it in accordance with the terms of the health insurance plans. (*Id.* at 8-9.)

On September 25, 2020, Plaintiff sued Defendant in state court, asserting claims for breach of contract, promissory estoppel, and quantum meruit. (*See* doc. 1-4.) After the case was removed to federal court, Defendant moved to dismiss the claims for promissory estoppel and quantum meruit under Rule 12(b)(6). (*See* doc. 8.) The motion was partially granted, and the quantum meruit claim was dismissed. (*See* docs. 21-22.)

Plaintiff has designated Jason Fanselau, Thomas Mitchell, M.D., and Kathy Toler, M.D. as its non-retained expert witnesses. (*See* doc. 25 at 1-3.) Mr. Fanselau, an IONM practitioner and former Revolution executive, will provide expert testimony regarding "the nature of the medical services provided by Revolution and of the charges for those services," and he is expected to testify

---

[2] After Revolution filed for Chapter 11 bankruptcy, the bankruptcy court confirmed the bankruptcy plan, which among other things, provided for the creation of a Liquidating Trust for all the Revolution entities and appointed Plaintiff as the collection agent to file this action on behalf of the Liquidating Trust. (*See* doc. 1-4 at 11.)

that Revolution's IONM medical services "were reasonable and necessary, that the charges were usual, customary, and reasonable, that the amount of the usual, customary, and reasonable charges for the services to these insured patients was $709,999, and that Defendant failed to follow the terms and conditions of plans, contracts, or policies." (*Id.* at 2.) Drs. Mitchell and Toler, the neurologists who were involved in the surgeries, will provide expert testimony about "the nature of the medical services provided by Revolution," and they are expected to testify that those services "were reasonable and necessary." (*Id.* at 2-3.)

On January 28, 2022, Defendant moved to exclude the expert testimony of Mr. Fanselau, Dr. Mitchell, and Dr. Koler under Rule 702 of the Federal Rules of Evidence. (doc. 40.)[3] Plaintiff responded on February 18, 2022, and Defendant replied on March 3, 2022. (*See* docs. 48, 52.)

## II. FEDERAL RULE OF EVIDENCE 702

Rule 702 governs the admissibility of expert testimony and provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based upon sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the main issue is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citations omitted). A court has discretion to keep an

---

[3]Defendant also filed a motion for summary judgment on the remaining claims against it. (*See* doc. 42.)

expert witness from testifying if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). The key factors in evaluating expert testimony are relevance and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See id.* at 592 n.10. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and the testimony is relevant and reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert's conclusions themselves.").[4]

---

[4] As noted by the Fifth Circuit, "the importance of the trial court's gatekeeper role is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)).

### A.     Mr. Fanselau

Defendant seeks to exclude Mr. Fanselau's expert testimony under Rule 702 on grounds that he is not qualified and his opinions are not reliable. (*See* doc. 41 at 8-10.)

#### *1.     Qualifications*

Defendant argues that Mr. Fanselau "is in no way qualified by skill, experience, training or education to render *any* expert opinions as to the medical necessity of the IONM services at issue in this case." (doc. 41 at 8-9 (emphasis original).)  It also argues that he is "not qualified to offer any expert opinions in this matter as to the usual, customary and reasonable rates of Revolution's IONM services the patients at issue received or the medical expenses incurred." (*Id.* at 9.)

Before allowing expert testimony to be heard, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).  "The standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the general field related to the subject matter in question." *Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV.A. H-07-3973, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008). "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009). The inquiry is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues." *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (quoting *Kumho*, 526

U.S. at 156). The court has wide discretion in determining whether an expert is qualified. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

      Mr. Fanselau has a Bachelor of Science in Neuroscience from the University of Texas at Dallas and a Certification for Neuro Intraoperative Monitoring (CNIM), and he has been a member of the American Society of Neurophysiological Monitoring (ASNM) since 2004. (docs. 49-1 at 1; 51-9 at 8.)[5] He has worked in the Intraoperative Neuromonitoring (IONM) industry for 19 years, and has participated in over 5,000 surgeries that utilized IONM. (doc. 49-1 at 1.) As an IONM Technologist from 2003 to 2005, Mr. Fanselau performed the testing, monitoring, and evaluation of the nervous system in various neuro, orthopedic, ENT, and vascular surgeries. (doc. 51-9 at 7.) From 2015-2017, he was Revolution's Chief Operations Officer (COO), where he was responsible for managing CNIMs and neurologists, developing and implementing the protocols and procedures for IONM services, and overseeing third-party billing and medical records services. (docs. 49-1 at 2; 51-9 at 5-6.) Since 2017, Mr. Fanselau has served as the Chief Executive Officer (CEO) of a company that provides executive administrative management services for IONM companies, and is involved in the review of billing records between IONM providers. (*Id.*)

      According to his sworn declaration, Mr. Fanselau has "in-depth knowledge as to both the anatomy and physiology of not only the processes of the various surgical procedures utilizing IONM but also how the patients' pre-operative conditions may be affected." (*Id.* at 2.) Even though he has worked on the management side of the IONM industry since 2006, he has maintained his clinical skill sets and continues to test, monitor, and evaluate the nervous system during IONM surgeries.

---

[5]Although Mr. Fanselau's Curriculum Vitae (C.V.) is referenced and identified as an exhibit to his sworn declaration, it was not included with Plaintiff's response to the motion to exclude. (*See* doc. 49-1.) A copy of the C.V. was filed as an exhibit with Plaintiff's response to Defendant's motion for summary judgment. (*See* doc. 51-9 at 5-8.)

(*Id.*)

Based on his academic qualifications and professional experience in the IONM industry, Mr. Fanselau is qualified to offer his opinions on the necessity and reasonableness of the IONM services provided by Revolution, and on the usual and customary rates for those services. *See Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 458 (5th Cir. 1996) ("Given [the expert']s broad, general experience in the insurance industry, we cannot say that the district court abused its discretion in qualifying him as an expert witness."); *see, e.g., United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 507 F. Supp. 3d 734, 749-50 (W.D. Tex. 2020) (finding surgeon's "experience overseeing the implementation of billing, coding, and Medicare compliance policies with" an insurance provider qualified him to opine on Medicare billing requirements). As the record reflects, Mr. Fanselau was the former COO of Revolution and developed many of Revolution's protocols and procedures for IONM services, and he currently serves as the CEO of a third-party management company for IONM providers. (docs. 49-1 at 2; 51-9 at 5-6.) He has performed IONM services in 5,000 surgeries and has substantial experience reviewing the medical and billing records involving IONM services. (doc. 49-1 at 1-2.)

Although Defendant notes that Mr. Fanselau is not a licensed physician, "Texas courts have found an expert qualified to provide opinion testimony on the reasonableness of medical charges where the expert is not a medical provider, or where the expert relies on data from a database to support their opinion." *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 WL 3074420, at *11 (W.D. Tex. June 10, 2020) (citations omitted). "*Daubert* demands reliability, not evidence of certification, and if nothing else, experience indicates that the fact that someone holds a degree or licence does not *ipso facto* indicate that he or she possesses reliable knowledge." *Natchez Reg'l*

*Med. Ctr. v. Quorum Health Res., LLC*, 879 F. Supp.2d 556, 577 (S.D. Miss. 2012) (citation omitted). Defendant's challenges to Mr. Fanselau's medical expertise go to the weight afforded to his anticipated testimony, not its admissibility. *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018) (recognizing that "[a] witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion") (quotations and citations omitted)); *see, e.g., Perez*, 2020 WL 3074420, at *11 (rejecting argument that witness's "experience as a practicing nurse, nurse consultant, and owner of a medical bill auditing business" failed to provide her with the education or training needed to qualify as an expert on reasonable medical charges). While Defendant may raise questions as to Mr. Fanselau's qualifications on cross-examination at trial, he is sufficiently qualified, based on his extensive relevant experience, to offer expert testimony regarding the reasonableness and necessity of the IONM services Revolution provided and the usual and customary rates for those services.

   2.   *Reliability*

Defendant argues that Mr. Fanselau's opinions regarding the usual and customary rates of Revolution's IONM services are unreliable and inadmissible because they "lack the appropriate foundation under Rule 702." (doc. 41 at 10.)

Reliability requires an assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *See Daubert*, 509 U.S. at 592-93. The Supreme Court has suggested that trial courts examine a nonexclusive list of factors, including whether a theory or technique has or can be tested, published, subjected to peer review, whether it has or can be subjected to standards

8

controlling its operation, the known or potential rate of error, and whether it is generally accepted. *Id.* at 593-94. The reliability determination ensures that the expert testimony is "supported by appropriate validation." *Id.* at 590.

The factors which the Supreme Court has suggested trial courts consider in determining reliability may or may not be applicable, depending upon "the particular circumstances of the particular case at issue" including "the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150. When assessing the reliability of non-scientific testimony, courts consider other factors including whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered. *See* Fed. R. Evid. 702; *Kumho*, 526 U.S. at 150-51. "If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts." *See* Fed. R. Evid. 702, advisory committee's note, 2000 Amends.

Here, Plaintiff provides Mr. Fanselau's sworn declaration, which includes a summary of his expert testimony and underlying methodology. (doc. 49-1.) It states that he "reviewed the medical records of all of the insured patients subject to this lawsuit." (doc. 49-1 at 3.) It also states:

> In regards to the rates charged for the IONM services that Revolution performed on the insured patients, it is my opinion that the rates for these services were usual and customary. My opinion is based upon my professional knowledge, experience, and a review of the third-party data service FAIR Health. FAIR Health is an independent nonprofit that collects and manages the nation's largest database of privately billed health insurance claims. FAIR Health has been entrusted with Medicare Parts A, B, and D claims since 2013. FAIR Health's goal is to ensure transparency in the billing industry by making data available to healthcare providers and patients. FAIR Health analyzes the data of each health insurance claim and produces data for healthcare providers and patients organized by CPT code and location (via zip code) for all of the procedures being performed.

(*Id.*)  Mr. Fanselau provides a table of Revolution's charges for the claims at issue, and opines that the charges were "usual and customary" based on his "review of the FAIR Health rates for similar IONM services to those which Revolution performed." (*Id.*)

Plaintiff has carried its burden in establishing that Mr. Fanselau's anticipated expert testimony is sufficiently reliable to be admitted in evidence at trial. *See Moore*, 151 F.3d at 276.  His opinions are not so fundamentally unsupported that they would not assist the fact-finder in reaching an intelligent and sound verdict.  His methodology involves his review of the patients' medical records, and then comparing the amount charged with the FAIR Health rates to determine whether the amounts charged were usual and customary. (*See* doc. 49-1 at 3.)  Although Defendant argues that Mr. Fansealu does not state what analysis he applied to reach his opinion, any perceived deficiencies with the methods and bases of his opinions go to the weight to be given to his testimony, not the admissibility, and may be raised through vigorous cross-examination at trial. *See Primrose Operating*, 382 F.3d at 562-63 (holding that questions relating to the bases and sources of an expert's opinion generally go to the weight of the opinion rather than its admissibility because it is "the role of the adversarial system, not the court, to highlight weak evidence"); *see, e.g., Equal Emp't Opportunity Comm'n v. S&B Indus., Inc.*, No. 3:15-CV-0641-D, 2017 WL 345641, at *7 (N.D. Tex. Jan. 24, 2017) (denying motion to exclude expert testimony based upon the expert's "allegedly limited and unreliable data, flawed methods, or faulty assumptions" because those "deficiencies ... can be attacked at trial").

Because Plaintiff has met its burden to establish that Mr. Fanselau is qualified and his testimony is reliable, Defendant's motion to exclude his expert testimony is denied.

**B.**     **Drs. Mitchell and Toler**

Defendant argues that Drs. Mitchell and Toler cannot offer opinions regarding the medical necessity and reasonableness of Revolution's IONM services provided because they were not the requesting medical provider for those services. (doc. 41 at 10.) It contends that all of their "theories, opinions, and testimony regarding the medical necessity and reasonableness of the IONM services that Revolution provided in this case must be excluded." (*Id.* at 11.)

"A treating physician is the prototypical expert who can be deposed or called to testify at trial without disclosing an expert report." *Lee v. Valdez*, No. CIV.A.3:07-CV-1298-D, 2008 WL 4287730, at *3 (N.D. Tex. Sept. 18, 2008); *see* Fed. R. Civ. P. 26(a)(2)(C). "[D]istrict courts in this circuit agree that the treating-physician exception to the expert report requirement applies only when the treating physician's opinion testimony is based on personal knowledge obtained from examining and treating an individual." *Cooper v. Wal-Mart Transp., LLC*, 2009 WL 290447, at * 1 (S.D. Tex. 2009). If the treating physician has not submitted a written report, the physician's testimony will be "limited to opinions acquired based on the physician's personal knowledge of the examination, diagnosis and treatment of a patient and not from information acquired from outside sources." *Claybrook v. Shemper Seafood Co., Inc.*, No. 1:16-CV-189-HSO-JCG, 2018 WL 8188227, at *2 (S.D. Miss. July 19, 2018) (citations and quotations omitted). "[W]here a physician's testimony 'relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like an expert and must submit a report under Rule 26(a)(2)(B).'" *Parker v. NGM Ins. Co.*, No. CV 15-2123, 2016 WL 3198613, at *2 (E.D. La. June 9, 2016) (citation omitted).

Here, Plaintiff has designated Drs. Mitchell and Toler as non-retained experts to offer testimony "regarding the nature of the medical services provided by Revolution." (doc. 25 at 2-3.) They are expected to testify that the medical services Revolution provided to the patients were

11

reasonable and necessary. (*Id.*) Even though Plaintiff does not expressly refer to Drs. Mitchell and Toler as treating physicians, the parties do not dispute that they were the neurologists who were reading the IONM reports while each patient underwent surgery. Because Drs. Mitchell and Toler are medical doctors who rendered medical services in connection with these surgeries, they may offer expert opinions regarding the reasonableness and necessity of Revolution's services, provided that they "formed those opinions based on [their] personal knowledge and observations obtained during the course of care and treatment." *Galvez v. KLLM Transp. Servs., LLC*, --- F.Supp.3d ----, No. 3:20-CV-0238-D, 2021 WL 5964629, at *3-4 (N.D. Tex. Dec. 16, 2021) (concluding that treating physician's testimony will be "limited to the opinions he formed while treating [the patient] and to information he would normally have reviewed as a part of that treatment" and excluding him from testifying "about the reasonableness of medical bills that are unrelated to his treatment and that he only obtained in preparation for litigation"). Their testimony "is limited to the facts and circumstances developed during that physician's personal care and treatment." *Salas v. Transwood Logistics, Inc.*, No. 6:19-CV-101, 2021 WL 4483511, at *5 (S.D. Tex. July 7, 2021), *adopted by* 2021 WL 4480746 (S.D. Tex. Sept. 30, 2021). They "may not offer opinion testimony based on information, such as medical records from other physicians or medical expense data, acquired outside the course of [the patient's] treatment." *Id.*; *see, e.g., Claybrook v. Shemper Seafood Co., Inc.*, No. 1:16-CV-189-HSO-JCG, 2018 WL 8188227, at *3 (S.D. Miss. July 19, 2018) (excluding treating physician's testimony as to the reasonableness and cost of treatment by other providers).

Even though Drs. Mitchell and Toler will not be permitted to testify outside the realm of the treating-physician exception regarding their treatment of each patient, a blanket exclusion of all

testimony pertaining to the medical necessity of Revolution's services is not warranted at this time. In the event that they are asked to give expert opinions that they are not qualified to render, or if the nature and scope of their testimony are beyond their treatment of the patients, Defendant may object, and the testimony may be limited accordingly. Defendant's motion to exclude Drs. Mitchell and Toler from testifying on the issue of medical necessity and reasonableness is denied.

### III.  CONCLUSION

Defendant's motion to exclude is **DENIED**.

**SO ORDERED** this 1st day of August, 2022.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE